**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LLOYD COLBERT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  17-cv-6237 |
| | ) | |
| | ) | |
| | ) | |
| STATE OF ILLINOIS, DEPARTMENT | ) | |
| OF TRANSPORTATION, et. al., | ) | Jury Trial Demanded |

Defendant.

**COMPLAINT**

Plaintiff, in his Complaint against the Defendant, alleges the following:

**NATURE OF THE CASE**

1.      This is an action seeking legal redress for racial discrimination and retaliation brought by the Plaintiff, a Lead Worker r with the Illinois Department of Transportation (IDOT) Emergency Traffic Patrol (ETP). Plaintiff also brings an action under the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq*.

2.      On or about January 11, 2016, Defendant placed Plaintiff on administrative leave. On July 11, 2016, Plaintiff filed a whistleblower complaint with the Office of Executive Inspector General for the Agencies of the Illinois Governor ("IG"). On August 19, 2016, Defendant terminated Plaintiff's employment. Plaintiff was terminated on pretextual grounds because of his race, African-American, in retaliation for his opposition to unlawful discrimination, and for filing a whistleblower claim with the IG. Excessive and racially discriminatory discipline of African-American maintenance workers at IDOT has long been a problem. In the 2007 Affirmative-Action Plan IDOT noted: "For 15 consecutive years, 1991-2006, the Department has identified the

negative impact caused from suspension rate of minority male maintenance workers (principally in IDOT's District 1)." District 1 is the district in which Plaintiff is employed. From 2007 to the present, IDOT has labeled the issue a "Problem Area" in their Affirmative Action plan noting that noting "African American males employed in the Service Maintenance category are suspended at a rate much greater than their representation in the work force." Statistics are sent to the Illinois Department of Human Rights (IDHR) which analyzes them and issues reports to IDOT regarding their progress in tackling the issue. The IDHR regularly expresses concern about the overrepresentation of African-American maintenance workers with regards to suspensions and discharges. However, beyond collecting years' worth of statistics, responsible management officials at Defendant have allowed the problem to continue.

3.      Plaintiff brings his racial discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and seeks declaratory and injunctive relief, back pay, reinstatement, front pay in lieu reinstatement and other equitable and monetary relief, compensatory damages, and an award of attorney's fees, costs and expenses.  Plaintiff also brings his whistleblower claim pursuant to the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq* and seeks declaratory and injunctive relief, back pay, reinstatement, front pay in lieu reinstatement and other equitable and monetary relief, compensatory damages, and an award of attorney's fees, costs and expenses.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the Plaintiffs' federal claims pursuant to 42 U.S.C. §2000e-5(f)(3) (Title VII); and 42 U.S.C. §§ 12101, et seq., as amended.  This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

6.      Plaintiff invoked and exhausted all mandatory pre-complaint administrative procedures by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 27, 2016. The United States Department of Justice issued a Right to Sue letter on July 17, 2017 and Plaintiff filed this Complaint within 90 days of his receipt of the letter. A true and correct copy of the Plaintiff's Notice of Right to Sue is attached to this Complaint as Exhibit A.

## PARTIES

7.      Plaintiff Lloyd Colbert is an African-American citizen of the United States and resident of the State of Illinois.

8.      At all times relevant to the Complaint, Plaintiff was an "employee" of IDOT within the meaning of Title VII and the Illinois Whistleblower Act.

9.      The Illinois Department of Transportation is a State-created governmental body created by and acting pursuant to Illinois law.

10.     IDOT was Plaintiff's "employer" within the meaning of Title VII, Section 1981 and the Illinois Whistleblower Act.

## FACTUAL ALLEGATIONS

11.     Plaintiff has been an IDOT employee since 2000 and most recently held the position of Lead (supervisor) Worker with Emergency Traffic Patrol (ETP) at IDOT's ETP facility at 3501 South Normal Street in Chicago, Illinois.

12.     Plaintiff's performance as a Lead Worker met or exceeded IDOT's expectations.

13.     On or about January 10, 2010, Plaintiff cross-filed a Charge of Discrimination with the

EEOC and the Illinois Department of Human Rights ("IDHR"), Charge No. 440-2010-01678, alleging racial discrimination, retaliation, and disability discrimination against IDOT.

14.     Also, in early 2010, Plaintiff filed a complaint of racial discrimination, retaliation and disability discrimination against IDOT with IDOT's Office of Chief Counsel, Bureau of Civil Rights.

15.     On April 25, 2016, one of Plaintiff's subordinates, Darin Monroe ("Monroe") threatened Plaintiff with criminal assault while Plaintiff and Monroe were both working at IDOT's ETP facility at 3501 South Normal Street in Chicago, Illinois.

16.     Pursuant to Plaintiff's responsibilities as a supervisor and in keeping with IDOT's personnel policies (IDOT's Personnel Policies Manual, Chapter 12 Violence in the Workplace, Sections 12-1 to 12-3), Plaintiff gave Monroe a written disciplinary report for threatening criminal assault/workplace violence and forwarded said report to Plaintiff's manager, James McKay ("McKay").  McKay responded to Plaintiff's written disciplinary report to Monroe by writing in an email to Plaintiff which stated "Thanks."

17.     IDOT did not discipline Monroe for his threat of threat of criminal assault directed at Plaintiff. IDOT's failure to discipline Monroe for his threat of criminal assault directed at Plaintiff was a violation of IDOT's Personnel Policies Manual, Chapter 12 Violence in the Workplace, Sections 12-1 to 12-3.

18.     On July 8, 2016, Monroe was insubordinate to Plaintiff, verbally assaulted Plaintiff and physically assaulted Plaintiff at IDOT's ETP facility at 3501 South Normal Street in Chicago, Illinois.

19.     On July 11, 2016, IDOT placed Plaintiff on paid administrative leave effective July 9, 2016.

20.     On July 26, 2016, IDOT placed Plaintiff on unpaid administrative leave pending discharge and charged Plaintiff with "Disruptive Conduct, Violence in the Workplace" due to Monroe's verbal and physical assault of Plaintiff.

21.     On August 19, 2016, IDOT terminated Plaintiff's employment, alleging that Plaintiff had violated IDOT's "zero-tolerance" policy by engaging in disruptive conduct and violence in the workplace when he was physically and verbally assaulted by Monroe.

22.     In IDOT's 2008 Affirmative Action plan IDOT noted "For 16 consecutive years, 1991–2006, the Department has identified the negative impact caused by the suspension rate of minority male maintenance workers (principally in IDOT's District 1 where the ETP facility at 3501 South Normal in Chicago, Illinois is located). These adverse impacts have been documented in IDOT's Title VII Plan Update submitted to the Federal Highway Administration and have been noted in the Illinois Department of Human Rights' quarterly reviews.

23.     In IDOT's 2007-2012 Affirmative Action plans IDOT stats that one "problem area" is the "suspension of African-African males" noting that "African American males employed in the Service Maintenance category are suspended at a rate much greater than their representation." In IDOT's 2007-2012 Affirmative Action plan IDOT stated that one "problem area" is the "disparate treatment" of minority highway maintenance employees "particularly African-Americans" who have been "more likely to be disciplined than white maintenance employees."

24.     On February 22, 2008 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[a]gencywide, discipline continues to pose a problem; African Americans who make up 8% of the agency received 27% of the suspensions."

25.     On May 8, 2008 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[i] the Service/Maintenance category, the discipline problem is of concern again. African American who

make up 7% of this category but received 14% of the suspensions.

26. On August 13, 2008 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[i]n the Service/Maintenance category, the discipline problem is of concern again. African American employees make up 7% of the S/M staff and received 19% of the suspensions."

27. On April 23, 2009 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[i]n the Service/Maintenance category, the discipline problem is of concern again. African American employees make up 7% of the S/M staff and received 18% of the suspensions."

28. On August 6, 2009 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[i]n the Service/Maintenance category, the discipline problem is of concern again. African American employees make up 7% of the S/M staff and received 22% of the suspensions."

29. In the agency as a whole, African Americans made up 8% of the staff and received 26% of the discipline. On November 10, 2009 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue." In the Service Maintenance job category, African American employees make up 7% of the staff and received 26% of the suspensions and 50% of the discharges.

30. On February 9, 2010 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees make up 8% of the staff and received 20% of the suspensions."

31. On May 6, 2010 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees make up 8% of the staff and received 24% of the suspensions."

32. On August 11, 2010 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American

employees make up 8% of the staff and received 32% of the suspensions."

33.     On November 30, 2010 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees made up 8% of the staff and received 33% of the suspensions and 50% of the discharges."

34.     On February 16, 2011 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees made up 8%of the staff and received 25% of the suspensions and 25% of the discharges."

35.     On August 29, 2011 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees made up 4% of the Service Maintenance staff and received 25% of the suspensions."

36.     On February 15, 2012 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees made up 9% of the staff and received 24% of the suspensions."

37.     On June 23, 2012 in the EEO/AA Quarterly Report the IDHR Liaison noted that "[d]iscipline continues to be an issue. In the Service Maintenance job category, African American employees made up 9% of the staff and received 21% of the suspensions."

38.     In its 2013, 2014, 2015, 2016 and 2017 Affirmative Action plans, IDOT has admitted that African American or Black males employed in the Service-Maintenance category are suspended at a higher rate than their representation in the workforce.

39.     Specific examples of discipline being more lenient with regards to similarly situated white IDOT employees in District 1 include: William Macklin, for what IDOT lists as his fourth offense,

was given a 15 day suspension, reduced to 5, for committing three offenses: " Civil Rights Violations - Racial Slurs·& Misconduct- Conduct Unbecoming State Employee & Misconduct-Discourteous Behavior & -10/10/08 allegedly made angry/threatening phone call, including the use of racial slur, to ETP Lead-Lead Worker Marvin Harrison's (African-American supervisor) cell phone." The offense would also be fairly classified as insubordination under IDOT's Personnel Policy Manual Section J.2 but IDOT chose not to charge him with that offense.

40.     Ralph Eme, a white highway maintainer with IDOT, repeatedly referred to his supervisor LLW Marvin Harrison as a "nigger", multiple times in front of white supervisors, Joe Novotny, Mitchell English, and Zennon McHugh but he was not disciplined.

41.     White highway maintainer, Michael Monterrubio, was charged by IDOT with "Misconduct-Verbal Altercation & Misconduct- Disorderly Conduct" for using foul and abusive language towards his African-American supervisor, Marvin Harrison a Lead-Lead worker, received a written warning for this, his first offense. The offense would also be fairly classified as insubordination under IDOT's personnel policy manual but IDOT chose not to charge him with insubordination for arguing with his African-American supervisor. IDOT expunged the charge from Monterrubio's record.

42.     On October 10, 2006, Raymond Arff ("A.R."), a White highway maintainer Lead-Lead Worker for IDOT, for what IDOT listed as his second offense, received a 1-day suspension for committing three offenses: "Misconduct – Disorderly Conduct, Violation of Safety Code – Unsafe Equipment Operation, Insubordination – Abusive Language Toward Supervisor & 8/14/2006 *Drove Front end loader toward supervisor @ high rate of speed nearly hitting him*."

43.     On July 28, 2005, James Barch ("B. Sr., J"), a White highway maintainer for IDOT, for what IDOT listed as a "similar offense" to previous offenses, received a 1-day suspension for

committing three offenses: "Misconduct – Disorderly Conduct, Insubordination – Abusive Language Toward Supervisor, Insubordination – Disrespectful Attitude" because he told a Lead-Lead Worker "fuck you, I'm going home sick. Write me up" in a meeting.

44. On April 9, 2003, Frederick Gibson , "F.G", a White highway maintainer for IDOT, who had what IDOT stated are "similar past offense(s)", was discharged, but then the penalty was reduced to a 10-day suspension for committing three offenses: Insubordination – Failure to Follow Supervisors Orders, Misconduct – Disorderly Conduct, Violence in the Workplace – Fights & Altercations" when he entered a lunchroom and exchanged words with co-worker, shoved a table into him and 'got into his face' then left yard w/o permission.

45. On January 22, 2007, Anthony Altmeyer, a White Highway Maintainer for IDOT, for what was listed as his first offense, received a 10-day suspension, later reduced to 5 days, for committing two offenses: "Violence in the Workplace – Threat(s): Co-worker(s), Misconduct – Disorderly Conduct" when he told a co-worker "Step outside. I'll break you in two. Think you're man enough, Let's go!"

46. On April 18, 2010, Anthony Altmeyer, a White Highway Maintainer for IDOT, for what was listed as his third offense, received a 10-day suspension, reduced to 1 day, for committing: "Misconduct – Creating A Negative Public Image, Misconduct – Disorderly Conduct, Poor Work Performance – Poor Supervisory Practice" when while working on pothole patching crew, was in verbal altercation with motorist wherein told motorist, 'fuck you' & further displayed his middle finger.

47. On January 24, 2011, Anthony Altmeyer, a White Highway Maintainer for IDOT, for what was listed as his third offense, received a 30 day suspension, later reduced to 10 days, for

committing three offenses: "Misconduct – Conduct Unbecoming State Employee, Misconduct – Disorderly Conduct, Violence in the Workplace – Threat(s): Co-worker(s) for saying he would "put a bullet" in the head of a co-worker's father, he would "beat" the co-worker's "ass", and then calling his co-worker's father saying he would "put a bullet in his head."

48.     On or about June 13, 2004, two white IDOT employees, James Pollick and Richard Donavan, who were stationed at the ETP facility located at 3501 South Normal Street, engaged in a violent altercation where Donavan struck/grabbed Pollick, threatened Pollick's life and family and made racially charged comments about Pollick's wife. IDOT's ETP management was made aware of the June 14, 2004 incident by several IDOT ETP employees including Plaintiff.

49.     The same IDOT supervisors and management who recommended Complainant's termination for alleged workplace violation but did not terminate the white employees listed above in paragraphs 39-48, did not discipline either Pollick or Donavan in any manner following the June 13, 2004 incident.

50.     By contrast, John Stewart, Jr., an African-American ETP worker in District 1 who was also employed at IDOT's ETP facility at 3501 South Normal in Chicago, Illinois was terminated on February 14, 2007 after being charged with engaging in "Violence in the Workplace" by IDOT after a single incident of self-defense.

## COUNT I
## TITLE VII RACE DISCRIMINATION

51.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-50 as if fully set forth herein.

52.     Plaintiff is African-American and Defendant was aware of his race.

53.     Plaintiff was satisfactorily performing the duties of his position as a Lead Worker with IDOT.

54. Defendant terminated Plaintiff, allegedly for a violation of its zero-tolerance workplace violence policy.

55. Similarly situated white employees were not terminated by IDOT for violations of its workplace violence policy.

56. Defendant's purported non-discriminatory reason for terminating Plaintiff's employment is pre-textual, as numerous White IDOT employees have engaged in workplace violence but have not been terminated.

57. The Plaintiff has been harmed by the Defendant's illegal racial discrimination because it has caused him to suffer degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

58. Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

59. Defendant's racially discriminatory conduct violated Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII").

**WHEREFORE**, the Plaintiff prays that the Court grant him relief on Count I of his Complaint and that the Court:

A. Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Title VII by terminating him based on his race;

B. Reinstate Plaintiff's employment with IDOT;

C. Award Plaintiff any outstanding back pay, lost overtime and order Defendant to remove any discipline from his file;

D. Award Plaintiff front pay in lieu of reinstatement;

E.      Award Plaintiff compensatory damages;

F.      Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

G.      Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

H.      Award such other and further relief as the Court deems just and proper.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII**

60.      Plaintiff re-alleges and incorporates the allegations of paragraphs 1-59 as if fully set forth herein.

61.      Defendant terminated Plaintiff's employment because Plaintiff filed Charge of Discrimination No. 440-2010-01678 and because Plaintiff filed an internal discrimination complaint with IDOT's Office of Chief Counsel.

62.      The Plaintiff has been harmed by Defendant's illegal retaliation including but not limited to, suffering degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

63.      Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

64.      Defendant's retaliation violated Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, as amended,

**WHEREFORE**, the Plaintiff prays that the Court grant him relief on Count II of his Complaint and that the Court:

A.      Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Title VII by terminating his employment in

retaliation for his Charge of Discrimination filed with the EEOC and IDOT's Office of Chief Counsel, Bureau of Civil Rights;

B.      Reinstate Plaintiff's employment with IDOT;

C.      Award Plaintiff any outstanding back pay and/or lost overtime and order Defendant to remove any discipline from his file;

D.      Award Plaintiff front pay in lieu of reinstatement

E.      Award Plaintiff compensatory damages;

F.      Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

G.      Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

H.      Award such other and further relief as the Court deems just and proper.

**COUNT III**
**SECTION 1981 RACE DISCRIMINATION**

65.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-64 as if fully set forth herein.

66.     Plaintiff is African-American and Defendant was aware of his race.

67.     Plaintiff was satisfactorily performing the duties of his position as a Lead Worker with IDOT.

68      Defendant terminated Plaintiff, allegedly for a violation of its zero-tolerance workplace violence policy.

69.     Similarly situated white employees were not terminated by IDOT for violations of its workplace violence policy.

70.     Defendant's purported non-discriminatory reason for terminating Plaintiff's employment is pre-textual, as numerous White IDOT employees have engaged in workplace violence but have

13

not been terminated.

71.     The Plaintiff has been harmed by the Defendant's illegal racial discrimination because it has caused him to suffer degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

72.     Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

73.     Defendant's racially discriminatory conduct violated Plaintiff's rights secured by the Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981").

        **WHEREFORE**, the Plaintiff prays that the Court grant him relief on Count III of his Complaint and that the Court:

        A.     Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Section 1981 by terminating him based on his race;

        B.     Reinstate Plaintiff's employment with IDOT;

        C.     Award Plaintiff any outstanding back pay, lost overtime and order Defendant to remove any discipline from his file;

        D.     Award Plaintiff front pay in lieu of reinstatement;

        E.     Award Plaintiff compensatory damages;

        F.     Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

        G.     Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

        H.     Award such other and further relief as the Court deems just and proper.

## COUNT IV
## RETALIATION IN VIOLATION OF SECTION 1981

74.     Plaintiff re-alleges and incorporates the allegations of paragraphs 1-73 as if fully set forth herein.

75.     Defendant terminated Plaintiff's employment because Plaintiff filed Charge of Discrimination No. 440-2010-01678 and because Plaintiff filed an internal race discrimination complaint with IDOT's Office of Chief Counsel.

76.     The Plaintiff has been harmed by Defendant's illegal retaliation including but not limited to, suffering degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

77.      Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

78.     Defendant's retaliation violated Plaintiff's rights secured by Civil Rights Act of 1866, 42 U.S.C. §1981 ("Section 1981").

        **WHEREFORE**, the Plaintiff prays that the Court grant him relief on Count II of his Complaint and that the Court:

        A.      Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under Section 1981 by terminating his employment in retaliation for his Charge of Discrimination filed with the EEOC and IDOT's Office of Chief Counsel, Bureau of Civil Rights;

        B.      Reinstate Plaintiff's employment with IDOT;

        C.      Award Plaintiff any outstanding back pay and/or lost overtime and order Defendant to remove any discipline from his file;

D.    Award Plaintiff front pay in lieu of reinstatement

E.    Award Plaintiff compensatory damages;

F.    Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

G.    Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

H.    Award such other and further relief as the Court deems just

## COUNT VI
## ILLINOIS WHISTLEBLOWER ACT

79.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1-78 as if fully set forth herein.

80.    740 ILCS 174/15(a) states that "An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

81.    740 ILCS 174/15(b) states "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

82.    On July 11, 2016, Plaintiff filed a complaint with the Office of Executive Inspector General for the Agencies of the Illinois Governor ("IG") alleging a violation of criminal law against an IDOT employee and alleging that IDOT failed to take the necessary steps to prevent a criminal assault by Monroe against Plaintiff.

83.    IDOT terminated Plaintiff's employment one month after he filed his complaint with the IG giving rise to the inference that the termination was in retaliation for Plaintiff's complaint.

84.     The Plaintiff has been harmed by Defendant's illegal retaliation including but not limited to, suffering degradation, embarrassment, humiliation, emotional distress, and the loss of income, benefits and other incidentals of employment.

85.     Defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's rights. Exemplary damages are warranted to prevent similar unlawful conduct by Defendant.

**WHEREFORE**, the Plaintiff prays that the Court grant him relief on Count II of his Complaint and that the Court:

A.      Issue a declaratory judgment against Defendant IDOT, finding that Defendant violated the rights of Plaintiff under the Illinois Whistleblower Act by terminating his employment in retaliation for his July 11, 2016 Complaint filed with the IG;

B.      Reinstate Plaintiff's employment with IDOT;

C.      Award Plaintiff any outstanding back pay and/or lost overtime and order Defendant to remove any discipline from his file;

D.      Award Plaintiff front pay in lieu of reinstatement

E.      Award Plaintiff compensatory damages;

F.      Order Defendant to pay prejudgment and post-judgment interest on all monetary amounts awarded in this action, as provided by law;

G.      Award Plaintiff his reasonable attorneys' fees, costs and expenses; and

H.      Award such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

LLOYD COLBERT

/s/Philip S. Holloway
Attorney for Plaintiff
53 W. Jackson Blvd., Suite 1234
Chicago, IL 60604
(312) 663-1560